# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LINDA BRADFORD, as Special Administrator of the ESTATE OF DEVELT BRADFORD, deceased, and LINDA BRADFORD, Individually, <br><br> PLAINTIFFS, <br><br> v. <br><br> CITY OF CHICAGO, a Municipal Corporation, CHICAGO POLICE OFFICER PHYLLIS GILL, CHICAGO POLICE OFFICER JOHN OTTO, and DETENTION AIDE DARRIN WEST, <br><br> DEFENDANTS. | No. 16 C 1663 <br><br> Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Before this Court is the City of Chicago's Rule 12(b)(6) motion to dismiss the recently added *Monell* claim to the above-captioned suit. For the reasons that follow, the motion is denied.

## Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877. Moreover, "when evaluating the sufficiency of a complaint," the Court may also consider "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss . . . so long as they are consistent of the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (internal quotation marks and citation omitted); *see also Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("[A] party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove" and "may find it prudent to do so") (citations omitted).

**Background**

The factual allegations in this case are simple, but serious. On November 15, 2011, Devalt Bradford was arrested and charged with first degree murder. R. 44 (Complaint) ¶¶ 9, 12. After some shuffling between interview rooms and lineups, on

November 16, 2011, Bradford was placed in a holding cell in the Fifth District lockup beyond the sight and hearing of the police officer and detention aide on duty. *Id.* ¶¶ 11, 13, 18-19. The cell was outfitted with a security camera, but the camera was broken, and had been for years before. *Id.* ¶¶ 14-17, 23. Despite numerous complaints from officers, the camera was never repaired. *Id.* ¶¶ 25-26. Plaintiff alleges that it is common knowledge that arrestees charged with serious felonies like murder are a suicide risk. R. 64 (Response) at 6. She further alleges that city employees knew of safer places in the lockup to hold "at-risk detainees" than the cell where Bradford was placed. *Id.*

On duty that night were one police officer and one detention aide, though previously the standard had been to have three or four employees on lockup duty in the cellblock where Bradford was detained. *Id.* The detention aide on duty had complained to his superiors on more than one occasion before that shift that "two people is not enough to work lockup." R. 64-2 at 6. No staffing adjustments were made in response to his complaints. *Id.*

In the early hours of November 17, 2011, Bradford hanged himself by his pants. R. 44 ¶ 21. Three days later, again with only two employees on lockup duty and no functioning security cameras, another arrestee held at the Fifth District also committed suicide, hanging himself by his underpants. *See Woods v. City of Chicago*, No. 16 C 1671, slip op. at 1 (N.D. Ill. Dec. 23, 2016) (order denying motion

3

for judgment on the pleadings).[1] According to Plaintiff, several other "extraordinary occurrences" such as deaths or serious injuries took place in city lockup cells beyond the sight and hearing of on-duty staff and without functioning cameras between 2006 and 2011.[2] R. 64 at 6-7.

This case was brought by Bradford's wife on his behalf and in her individual capacity. It alleges that the continuous and systematic understaffing of city lockups and the City's ongoing failure to repair security equipment installed to ensure inmate safety created constitutionally unreasonable conditions of confinement for inmates at risk of suicide. R. 44 ¶¶ 53-56. She seeks to hold the City responsible for failing to adequately supervise her husband, who had been charged with murder,

---

[1] On a motion to dismiss, the Court may consider relevant matters outside the pleadings if they are in the public record and subject to judicial notice under the Federal Rules. *See White v. Keely*, 814 F.3d 883, 885 n. 2 (7th Cir. 2016) (considering public court documents); *see also Geinosky*, 675 F.3d at 745 n.1.

[2] Plaintiff does not allege whether these incidents occurred at the Fifth District lockup, but has requested discovery of relevant records to ascertain whether that is the case. *See* R. 56-1. On March 8, 2017, the Court stayed discovery not "absolutely necessary" to Plaintiff's response to this motion, and left it to the parties to negotiate the scope of the stay in light of the ruling. Apparently standing on the Court's order, the City refused to produce records from the Fifth District or any other lockup related to "extraordinary occurrences" such as those alleged in the complaint. *See* R. 56 at 4 n. 3; R. 64 at 5 n. 1. The City now seeks to penalize Plaintiff for her inability to identify with specificity the "extraordinary occurrences" referenced in the complaint and response. R. 68 at 7 ("Conspicuously, Plaintiffs . . . do not provide any context such as alleging other incidents in the lockups with broken security cameras or whether these other detainees represented "at-risk detainees" similar to the decedent.") The City may not use the Court's limitation on discovery as both a shield and a sword. Plaintiff has alleged on information and belief that the records will show that during the relevant time period, as many as one "extraordinary occurrence" per week involving inmate safety took place in understaffed city lockups with non-functioning cameras. For the purpose of this motion to dismiss, the Court will construe that allegation in Plaintiff's favor.

4

and thus to prevent his untimely death. *Id.* (Count IV). The City moves to dismiss the *Monell* claim "for boilerplate pleading." R. 56.

**Discussion**

When the government takes people into its custody, the Eighth Amendment's prohibition on cruel and unusual punishment requires the government not to act with deliberate indifference to serious threats to prisoners' health and safety. *Daniel v. Cook Cnty.*, 833 F.3d 728, 733 (7th Cir. 2016) (citations omitted); *see also Cavalieri v. Shepard*, 321 F.3d 616, 623 (7th Cir. 2003) (recognizing the right to be free from deliberate indifference to suicide).[3] For pre-trial detainees like Bradford, "the Due Process Clause of the Fourteenth Amendment imposes at least as robust a duty on government custodians." *Id.*

To hold the City liable in an unreasonable conditions of confinement case, Plaintiff must show that an "'official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind [Bradford's] constitutional injury.'" *Daniel*, 833 F.3d at 734; *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). Here, Plaintiff alleges that

---

[3]     The Supreme Court recently determined that there is no constitutional right to suicide prevention screening in correctional facilities. *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015). In reaching its conclusion, the Court was careful to note that "officials who know of an inmate's particular vulnerability to suicide must not be recklessly indifferent to that vulnerability." *Id.* at 2045. Here, Plaintiff alleges that the city knew that Bradford, as a pre-trial detainee charged with a serious felony, was particularly vulnerable to suicide. The *Cavalieri* rule is consistent with *Taylor*, and therefore remains the law of this district. *See Woods*, No. 16 C 1671, slip op. at 3 (noting that "[t]he *Taylor* court left intact the general principle from *Farmer v. Brennan*, 511 U.S. 825 (1994) that under § 1983, 'liability requires actual awareness of risk.'").

5

Bradford's death was the consequence of a widespread custom at the Fifth District lockup of inadequately supervising at-risk arrestees. *Monell* claims like Plaintiff's are typically proven by reference to four elements: (1) a widespread municipal practice so permanent and well-settled that it constitutes a custom; (2) a harm or risk of harm to the plaintiff that is sufficiently serious to implicate the Constitution; (3) the defendant municipality's deliberate indifference to that harm or risk; and (4) a causal link between the policy or custom of the municipality and the constitutional injury by the plaintiff. *See Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 926-27 (7th Cir. 2004). There is no question that the harm alleged in this case is serious. *See id.* at 926 (finding the "serious harm" element "obviously satisfied" by an inmate's suicide). The City argues that as to each of the other elements, however, Plaintiff's allegations are inadequate to state a plausible claim for relief.

As a preliminary matter, the Court has indicated its skepticism during status hearings in this case that a constitutional right to cameras in jail cells exists. Having now reviewed the case law, the Court remains skeptical.[4] This does not

---

[4] However, there does seem to be a reasonable degree of consensus that at a minimum, officers and others on duty in jails or lockups should have the ability to see or hear inmates and respond promptly to dangerous situations and calls for help. *See, e.g., Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (affirming a jury verdict for the plaintiff on a *Monell* claim where the city police had a "custom or policy . . . to use a sobering cell that lacked adequate audio surveillance to detain more than one belligerent drunk person while checking the cell visually only once every half hour"); *Thompson v. Spears*, 336 F. Supp. 2d 1224, 1234 (S.D. Fla. 2004) (noting that "the Florida Model Jail Standards state that inmates should be within either sight or hearing distance of [ ] officers," but granting summary judgment for the defendants where the officer posts were not

settle the matter, however, as to whether Plaintiff has stated a *Monell* claim against the City. In the Court's view, the right Plaintiff claims here is not to functioning surveillance cameras, but to constitutionally adequate care and supervision. If, as Plaintiff alleges, the security cameras were part of the City's system for supervising detainees, and if that system failed in a way that caused a deprivation of Bradford's constitutional rights, then the problem with the cameras may be an important part of Plaintiff's case for deliberate indifference. So while the broken camera does not, in itself, support a constitutional claim, it may nevertheless provide support for Plaintiff's broader argument that official indifference to systemic problems with supervision at the Fifth District lockup created unreasonable conditions of confinement leading to Bradford's suicide. *See Daniel*, 833 F.3d at 736-37 (finding no constitutional right to a grievance procedure but finding systemic problems with the jail's grievance procedure relevant to whether the government was deliberately indifferent to the plaintiff's medical needs).

A. *De facto* policy

The City argues that Plaintiff failed to plausibly allege facts that Bradford's suicide was not an "isolated incident," but rather the product of "a systematic or widespread custom or practice." R. 56 at 6. Indeed, the Seventh Circuit has held that to plead a *de facto* policy or widespread custom, a Plaintiff must allege a

---

located so far that officers could not hear calls for help); *see also* Ill. Admin. Code tit. 20, § 720.60(a)(1) (requiring periodic "visual checks by personal inspection" of arrestees in city lockups "unless continuous audio and visual checks conducted with a monitoring device has been approved as a variance").

7

"general pattern of repeated behavior (*i.e.*, something greater than a mere isolated incident)." *Daniel*, 833 F.3d at 734 (quoting *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006)). "The challenge in litigation like this is to distinguish between systemic problems showing official deliberate indifference and occasional lapses that are inevitable even in well-run institutions." *Id.* And while it may be helpful to establishing a widespread custom or practice to show that other inmates suffered similar constitutional injuries, *see Foy v. City of Chicago*, 2016 WL 2770880, at *7 (N.D. Ill. May 12, 2016) (citing *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009)), no such showing is required: "[E]vidence of a single violation of federal rights can trigger municipal liability if the violation was a 'highly predicable consequence' of the municipality's failure to act." *Woodward*, 368 F.3d at 929 (citing *Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. 397, 409 (1997)). At this stage in the proceedings, all Plaintiff must plead is "factual content that allows the Court to draw the reasonable inference that the defendant maintained a policy, custom, or practice that contributed to the alleged violation." *Karney v. City of Naperville*, 2015 WL 6407759, at * 3 (N.D. Ill. Oct. 22, 2015) (internal quotation marks omitted) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011)).

She has done so. Plaintiff alleges that certain cells in city lockups, including the one where her husband was held on the night of his death, are beyond the sight and hearing of lockup staff. She alleges that over the course of years, officials with authority over city lockups failed to repair in-cell security cameras installed to enhance monitoring capabilities despite repeated complaints from employees that

8

the lack of functional cameras compromised inmate safety. Plaintiff also alleges that during the period the cameras were not working, officials opted to reduce lockup staffing as a matter of course, rather than to increase it or at least maintain the *status quo*. Finally, she alleges that the City had no policy at all for holding at-risk detainees in more readily monitored locations to ensure their safety. In other words, Plaintiff alleges a general pattern of decision-making over a period of years that resulted in a *de facto* policy of inadequate oversight of at-risk detainees. *See Daniel*, 833 F.3d at 735 (explaining that *Monell* liability may be premised on "systemic and gross deficiencies in staffing, facilities, equipment or procedures").

The City argues that despite the pattern of conduct Plaintiff alleges, her claim nevertheless fails because it does not identify others who suffered the same constitutional harm—suicide—under similar circumstances. *See* R. 56 at 9 ("Plaintiffs must allege more than just the underlying incident"); R. 68 at 5. This argument fails for at least three reasons. First, Plaintiff *has* identified another incident of suicide under similar circumstances–one that occurred within days of Bradford's suicide. This, of course, lends credence to Plaintiff's claim that Bradford's placement in a cell without functioning cameras where he could not be readily seen or heard by lockup staff—and where he then committed suicide—was more than merely a "random event" limited to the unique circumstances of his case.

Second, it is incorrect that the Seventh Circuit requires a Plaintiff to plead a certain number of similar incidents to survive a motion to dismiss. In support of its position that a particular number of incidents is required, the City cites *Thomas v.*

9

*City of Chicago*, 604 F.3d 293, 303 (7th Cir. 2010), which considered whether to uphold a jury verdict on the plaintiff's *Monell* claim, not whether the plaintiff had stated a claim in the first instance. In deciding that issue, the court declined to "adopt any bright-line rules defining a 'widespread custom or practice,'" on the basis that "there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability." *Id.* The *Thomas* court cited *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988), which held that "more than one instance" is required, as well as *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002), which held that "three incidents where vehicle owners were erroneously told that their vehicles were not at Lot 6 do not amount to a persistent and widespread practice." *Id.* Summarizing the rule, the court continued:

> [T]he plaintiff must demonstrate that there is a policy at issue rather than a random event. This may take the form of an implicit policy or gap in expressed policies, or a series of violations to lay the premise of deliberate indifference. Beyond these threshold requirements, the jury must make a factual determination as to whether the evidence demonstrates that the [municipal defendant] had a widespread practice that [caused] the alleged constitutional harm.

*Id.* (internal citations and quotation marks omitted). More recently, in *Chatham v. Davis*, 839 F.3d 679, which considered whether summary judgment was properly entered for a municipal defendant, the Seventh Circuit elaborated on its ruling in *Thomas*. *Id.* at 685. It held that while *Monell* claims "normally require evidence that the identified practice or custom caused multiple injuries," "in a narrow range of circumstances, the possibility of harm from a custom or practice may be so obvious that evidence of a series or prior injuries is not needed to support an inference of deliberate indifference." *Id.* at 685 (internal quotation marks and

citations omitted). The *Chatham* court referred to *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917 (7th Cir. 2004), wherein the Seventh Circuit held that "evidence of a single violation of federal rights can trigger municipal liability if the violation was a highly predictable consequence of the municipality's failure to act." *Id.* at 929 (explaining that an absence of similar injuries may "simply show[ ] that [the municipal defendant] was fortunate, not that it wasn't deliberately indifferent."); *see also Cruz v. Dart*, 2017 WL 1021992, at *5 (N.D. Ill. Mar. 16, 2017) (aggregating Seventh Circuit authority, including *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006), to explain that "[t]he court does not mechanically count the number of incidents, [ ] but instead looks for competent evidence tending to show a general pattern of repeated behavior").

Here, Plaintiff alleges that the City permitted the placement of at-risk detainees in cells where they could not readily be seen and heard, despite safer options, whether as a matter of policy or the absence of a policy. She further alleges that the City failed over a period of years to fix broken security cameras in those cells or to adequately staff the lockup to compensate for the lack of in-cell surveillance. These allegations support a plausible inference at this stage in the proceedings that Bradford's suicide was the result of the City's systemic failure to adequately supervise at-risk detainees. And while Plaintiff cannot now point to a third arrestee beyond Bradford and Woods who met a similar fate, discovery may reveal one–or even several more. Whether it does, or whether the two suicides already identified are sufficient for Plaintiff to prevail on her *Monell* claim, are

questions for another day. *See Price v. City of Chicago*, 2017 WL 36444, at *10 (N.D. Ill. Jan. 4, 2017) ("It is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience, but the presentation of such evidence makes it more difficult to show there was a widespread custom or practice instead of a random event. When the same incident of which a plaintiff complains has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer there is a policy at work.") (internal quotation marks and citations to authority omitted).

Third, the City's reliance on *Foy v. City of Chicago*, 2016 WL 2770880 (N.D. Ill. May 12, 2016) is misplaced. *Foy*, which does not control this Court, did not hold as the City argues that a custom may not be inferred on the pleadings simply because the plaintiff failed to allege a certain number of similar injuries. Rather, *after permitting discovery of all deaths at a lockup within a five year period* (three of the eight of which were suicides, at least one by hanging), the *Foy* court held that the plaintiff's failure to identify any other deaths like her son's, which allegedly resulted from inadequate medical treatment of a drug overdose, weighed against a finding of a widespread policy or practice. *Id.* at *8. That has little bearing on this case, where no meaningful discovery has taken place on Plaintiff's *Monell* claim and Plaintiff has already identified another incident similar to the one that befell Bradford. Furthermore, the facts alleged in *Foy* are so wildly different from the facts alleged here that any effort to draw an analogy strains reason. In *Foy*, the officers and detention staff on duty had eyes and ears directly on the decedent as he

12

was dying. *Id.* at *1. Instead of seeking out medical treatment, they told him to "shut the fuck up" as he plead for help. *Id.* at *1. Here, of course, Plaintiff alleges that no one could see or hear Bradford as he died, because despite being at-risk for suicide, he was placed beyond the sight and hearing of employees in a cell without functioning surveillance cameras. Simply put, vastly different policies and practices are at issue here as compared with *Foy*, making the opinion in that case unhelpful to the Court's analysis.

B.     Deliberate Indifference

The City also argues that Plaintiff's allegations are too threadbare to support an inference that the City acted with deliberate indifference. R. 56 at 10. The Seventh Circuit has said "that deliberate indifference requires a showing of more than mere negligence (or even gross negligence) but less than purposeful infliction of harm." *Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 926 (7th Cir. 2004); *see also Cavalieri v. Shepard*, 321 F.3d 616, 621 (7th Cir. 2003) (applying a "subjective recklessness" test). "A detainee establishes a § 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." *Woodward*, 368 F.3d at 926-27 (quoting authority). To make this showing, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 927 (quoting *Farmer v. Brennan,* 511 U.S. 825, 842 (1994)).

Plaintiff alleges that officials were aware as a general matter of the heightened suicide risk of arrestees charged with serious crimes. She further alleges that as frequently as once per week, inmates caused serious harm to themselves or others in city lockups without functioning security cameras due to inadequate staffing and supervision. She alleges that employees logged numerous complaints about the impact of broken security cameras and staffing reductions on inmate safety, and furthermore that during the time period at issue, those complaints went unanswered. Taken together, and considering the circumstances of Bradford's suicide, the Court may plausibly infer at this stage in the proceedings that officials were deliberately indifferent to a known risks to at-risk inmates like Bradford.

C. Causation

Finally, the City argues that Plaintiff's allegations do not support an inference that the lockup supervision practices were "the moving force" behind Bradford's suicide. R. 56 at 6-7. As the Seventh Circuit teaches, it is only when the challenged practice or custom "inflicts the injury[,] that the government as an entity is responsible under § 1983." *Woodward*, 368 F. 3d at 928 (citing *Monell*, 436 U.S. at 694). On the issue of causation, the City again turns to *Foy* at its peril. R. 68 at 9. In *Foy*, the Court held that "even if Plaintiff alleged sufficient facts to demonstrate a widespread practice of failing to maintain surveillance cameras, Plaintiff has stated no facts or allegations to support an inference that such a practice could have been the 'moving force' behind [the decedent]'s death." 2016 WL 2770880 at *10. The court reached that conclusion because even without functioning surveillance

cameras, the employees in *Foy* could readily see the deteriorating condition of the decedent and hear his (and others') pleas for help. *Id.* In other words, the death of the detainee in *Foy* had nothing to do with the surveillance capabilities of the staff, and thus the lack of functioning cameras was irrelevant to causation.

The allegations in this case are markedly different. Here, Plaintiff alleges that despite Bradford's at-risk status, he was held in a location with broken surveillance equipment where he could not be readily seen or heard by staff. It is precisely this lack of oversight that Plaintiff alleges prevented the on-duty officer and aide from timely responding to her husband's suicide. Unlike *Foy*, in this case no one was watching as Bradford died. Thus, on the facts construed in Plaintiff's favor, an inference of causation is plausible.

**Conclusion**

For the foregoing reasons, the City's motion to dismiss, R. 56, is denied. The parties are to appear to discuss a reasonable discovery schedule on the *Monell* claim on May 31, 2017 at 9:00 am.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: May 15, 2017

15