# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LINDA BRADFORD, as Special, Administrator of the Estate of DEVELT BRADFORD, deceased, and LINDA BRADFORD, Individually,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF CHICAGO, a Municipal Corporation, CHICAGO POLICE OFFICER PHYLLIS GILL, CHICAGO POLICE OFFICER JOHN OTTO, and DETENTION AIDE DARRIN WEST,<br><br>*Defendants*. | No. 16 CV 1663<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Before the Court is the City of Chicago (the "City"), Chicago police officers Phyllis Gill and John Otto, and detention aide Darrin West's (Gill, Otto, and West together, "the Individual Defendants," and the City and the Individual Defendants together, "Defendants") joint motion to bifurcate plaintiff Linda Bradford's ("Plaintiff") claim against the City under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1987), stay *Monell* discovery, and enter the City's limited consent to liability for compensatory damages. R. 175. For the following reasons, that motion is granted in part and denied in part.

## Background[1]

This case involves the suicide of Develt Bradford ("Bradford") while in the City of Chicago's custody. Bradford was arrested by Chicago police officers and taken to a Chicago police station on November 15, 2011. R. 44 ¶¶ 9, 10, 12. The next evening, Bradford was informed that he was being charged with first degree murder and robbery. *Id.* ¶ 42. According to the allegations in the operative complaint, he was placed in a cell in lockup at approximately 9:00 p.m. that night by the Individual Defendants and other Chicago police officers who are not party to this suit. *Id.* ¶¶ 13-14. Bradford's cell was out of sight and sound of the booking area where lockup personnel sat, and contained cameras that when operative transmitted live video footage to the front of the lockup to prevent inmate harm. *Id.* ¶¶ 15-18, 44-45. But the cameras were not functioning and hadn't been operable for a period of years—a fact of which Defendants were aware. *Id.* ¶¶ 14, 23-26, 45. Later that same evening, Bradford learned that his bond hearing would not take place within the customary 48 hours of his arrest. *Id.* ¶ 20. A few hours later, Bradford was found dead, hanging from his neck, suspended by a pair of pants in his cell. *Id.* ¶¶ 21-22.

Plaintiff initially filed this action in Illinois state court in December 2011 as administrator for the estate of Bradford, her late husband. The court permitted several iterations of her complaint, in each case alleging only state law claims. But after completing discovery, Plaintiff filed a Fifth Amended Complaint alleging a

---

[1] Additional background facts are set forth in the Court's May 15, 2017 opinion denying the City's motion to dismiss the *Monell* claim against it. R. 72.

federal claim (against the Individual Defendants under 42 U.S.C. § 1983) for the first time. R. 1. Defendants removed the action to this Court in January 2016. *Id.* At that time, discovery was complete on the then-current allegations. Defendants moved for summary judgment in August 2016. R. 22. Ultimately, however, the Court permitted Plaintiff to amend her pleading once more in February 2017, this time to include a *Monell* claim against the City. R. 43; R. 44. Accordingly, the Court denied the summary judgment motion without prejudice. *Id.*

In all, the Sixth Amended Complaint sets forth: (1) Illinois state law claims against the Individual Defendants under the Wrongful Death Act, 740 ILCS 180/0.01, *et seq.* (Count I) and the Survival Act, 755 ILCS 5/27-6, *et seq.* (Count II); (2) *respondeat superior* and indemnification theories against the City (Counts V and VI, respectively); (4) a Fourth Amendment Section 1983 claim against the Individual Defendants[2] (Count III); and 5) a *Monell* claim against the City (Count IV). R. 44.

In Count III, Plaintiff alleges that the Individual Defendants' failure to properly supervise Bradford after he received notice of his charges was objectively unreasonable and posed a substantial risk of harm to Bradford's health and safety in violation of his Fourth Amendment rights. *Id.* ¶¶ 40-51. And in her *Monell* claim (Count IV), Plaintiff alleges that the City's ongoing failure to repair camera

---

[2] Claims related to conditions of confinement are governed by different constitutional amendments depending on the individual's status within the criminal justice system. Where, as here, the individual is under arrest but has not yet received a judicial determination of probable cause, the Fourth Amendment governs. *See Lopez v. City of Chi.*, 464 F.3d 711, 719 (7th Cir. 2006) ("the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made") (internal quotations omitted).

equipment installed to ensure inmate safety and systematic understaffing of city lockups created constitutionally unreasonable conditions of confinement for inmates at risk of suicide. *Id.* ¶¶ 53-56.

The Court extended the fact discovery cutoff on the *Monell* claim to October 18, 2019, but has not yet set an expert discovery schedule. R. 174. On July 26, 2019, Defendants jointly filed this motion to bifurcate Plaintiff's *Monell* claim and to stay *Monell* discovery. Included with their motion was a limited consent to the entry of judgment against the City if the Court grants Defendants' motion to bifurcate and stay ("Limited Consent"). R. 175, Ex A. In it, the City consents to entry of judgment against it for compensatory damages and reasonable attorneys fees "[w]ithout admitting the *Monell* allegations" if any Individual Defendant is found "liable for a violation of [Bradford's] constitutional rights," including on summary judgment. *Id.* at 2. The Limited Consent further provides that the City also consents to the entry of such a judgment if the Individual Defendants are absolved of liability because of qualified immunity. *Id.* at 2-3.

At the hearing on Defendants' motion, the Court told the parties that the fact discovery cut-off date would stand. However, the Court also informed the parties that if it otherwise decided to grant Defendants' motion to bifurcate and stay the *Monell* claim, the Court would also stay expert discovery pending the resolution of the other claims.

4

## Standard

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims." Fed. R. Civ. P. 42(b). Whether to bifurcate the trial of any issues or claims is within the Court's "considerable" discretion. *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000). Indeed, the Court may "separate claims or issues for trial if the separation would prevent prejudice to a party or promote judicial economy." *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment," which guarantees a jury trial for civil cases in federal court. *Id.* A district court also has wide discretion with respect to discovery matters, and Federal Rule of Civil Procedure 26(d) allows a court to stay discovery on *Monell* claims. Fed. R. Civ. P. 26(d); *Carr v. City of N. Chi.*, 908 F. Supp. 2d 926, 927 (N.D. Ill. 2012).

Motions to bifurcate *Monell* claims are frequently granted in this District because such claims typically require a significant amount of work—including expert discovery—that may ultimately be for naught because in "many if not most cases, disposition of the individual claims will either legally or practically end the litigation." *Medina v. City of Chi.*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000). Indeed, a plaintiff's failure to prove that he suffered a constitutional injury at the hands of an individual employee typically is fatal to his *Monell* claim against the municipality. *Id.* On the other hand, if the plaintiff prevails on his constitutional claim against the municipal

employee, he is "likely not to want or need to proceed any further," *id.*, because Illinois law requires a "local public entity to pay . . . any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable." 745 ILCS 10/9-102. In all cases, the Court evaluates a motion to bifurcate on the facts before it, *Saunders v. City of Chi.*, 146 F. Supp. 3d 957, 968 (N.D. Ill. 2015), and its decision will be overturned "only upon a clear showing of abuse." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008).

**Analysis**

Defendants contend that: (1) a combined trial that includes the *Monell* claim would prejudice both the City and the Individual Defendants; and (2) judicial economy favors bifurcation and stay of *Monell* discovery because expert discovery would be burdensome and costly, and may not be necessary due to the Limited Consent. R. 175; R. 180. In response, Plaintiff argues that bifurcation is improper because her *Monell* claim is not contingent upon the success of her Section 1983 claims against the Individual Defendants, and that Defendants' arguments regarding discovery burdens are moot because the Court ordered that *Monell* discovery proceed. R. 179.

At the outset, the Court notes that Plaintiff did not discuss the prejudicial effect of a joint trial on Defendants. Nor did she address the impact of the Limited Consent or acknowledge that it is the *expert* discovery to which Defendants principally object (and which has yet to occur), not the fact discovery that the Court

ordered the parties to finish. As explained below, each of these considerations inform the result here.

I.   **Unfair Prejudice**

Bifurcation may be proper solely because a joint trial would be prejudicial to the moving party. *See Awalt v. Marketti*, 75 F. Supp. 3d 777 (N.D. Ill. 2014) (bifurcating *Monell* claim "to avoid an undue risk of unfair prejudice" despite that "the possibility of *Monell* liability will not be foreclosed if the jury finds there is no individual liability"); *see also Chlopek*, 499 F.3d at 700 (bifurcation is appropriate *either* to prevent prejudice *or* promote judicial economy) (emphasis added). Here, Defendants contend that a combined trial that includes the *Monell* claim would prejudice both the Individual Defendants and the City.

***Individual Defendants.*** Defendants argue that the "vast majority" of a joint trial would concern "city officials, citizens, and conduct" spanning 6 years that is "wholly unrelated" to the Individual Defendants' conduct on the single day at issue in the case against them. R. 175 at 11. As such, there is a "real danger" that such evidence would "contaminate the mind of the finder of fact," and result in "liability by association alone." *Id.* (quoting *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *3 (N.D. Ill. July 16, 2008)). The Court agrees, and Plaintiff offers no retort. Indeed, the possibility of similar evidence regarding non-parties has been found to warrant bifurcation. *See Veal v. Kachiroubas*, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("evidence . . . regarding [an] [entity]-wide policy, practice or custom involving multiple improper [individual] actions poses a danger of undue prejudice to the

7

[individuals] by creating the perception that the [entity] routinely acts improperly, even if the [individuals] acted properly in this case."); *see also Tanner v. City of Waukegan*, 2011 WL 686867, at *9-10 (N.D. Ill. Feb. 16, 2011) ("If admitted as part of his case against the City, such evidence could prejudice the individual defendants' ability to distinguish their own actions from those of other non-party officers."). Further, to the extent that the evidence offered in any combined trial were to concern other acts of the Individual Defendants themselves, that, too, is problematic. *See Awalt*, 75 F. Supp. 3d at 780 (granting motion to bifurcate because evidence of other acts was prejudicial to the individual defendants on the claims against them). And such a result is likely here; indeed, West was named a defendant in another detainee case arising from a suicide occurring three days after Bradford's. *See Woods v. City of Chicago, et al.*, Case No. 16 C 1671 (N.D. Ill.), R. 23 (order denying motion for judgment on the pleadings).[3] Accordingly, particularly here, where the trial of the *Monell* claim will involve evidence of suicide and attempted suicide dating years prior to the incident at issue, the risk of prejudice to the Individual Defendants in a single consolidated trial is real.

**The City.** Defendants argue that a joint trial would also prejudice the City in this case because Plaintiff brings a *respondeat superior* claim against it and there can be no *respondeat superior* liability under *Monell*. R. 175 at 12; *see also Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011) ("There is no respondeat superior liability under § 1983; the Supreme Court 'distinguish[es] acts of the

---

[3] The parties settled this case prior to trial.

8

*municipality* from acts of *employees* of the municipality.'" (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986))). More specifically, Defendants contend that a combined trial in which the jury is asked to weigh evidence of both individual employee misconduct and City policy risks that "*Monell* would devolve into a *respondeat superior* claim," a risk "easily avoidable by bifurcating the *Monell* claim." R. 175 at 12. The Court finds this point compelling, and Plaintiff again fails to respond. Accordingly, including the *Monell* claim in a single trial together with the other claims in this suit risks the possibility of unfair prejudice to each Defendant, and counsels in favor of bifurcation.

## II. Judicial Economy and Individual Defendant Liability as a Condition Precedent to the *Monell* Claim

Plaintiff argues that bifurcation is improper here because her *Monell* claim does not depend on the success of the claims against the Individual Defendants, and thus "[t]he *Monell* trial is inescapable." R. 179 at 3. Defendants initially argued that Plaintiff must first prove that Bradford suffered a constitutional violation by at least one Individual Defendant before *Monell* liability is possible, and that the entry of the Limited Consent would obviate the need for continued litigation of the *Monell* claim. R. 175 at 5-6. But Defendants retreat somewhat in their reply, stating that whether the City may be liable in the absence of individual officer liability is "irrelevant" because "there are other compelling reasons to bifurcate," including the prejudice to Defendants outlined above. R. 180 at 1-2 (citing *Awalt*, 75 F. Supp. 3d at 781-82).

Generally, "a municipality's liability for a constitutional injury 'requires a finding that the individual officers are liable on the underlying substantive claim.'"

9

*Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) (citations omitted). But "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (emphasis in original). For example, a verdict in favor of individual defendants because of qualified immunity is not inconsistent with a verdict against the municipality (which lacks that defense). *Id.* This situation is expressly contemplated by the Limited Consent. But *Monell* liability also exists without individual liability where the individual actor thinks that "her decisions were an appropriate response" and her failure is "negligent, or even grossly negligent, but not deliberately indifferent," yet the "institutional policies themselves are deliberately indifferent." *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 378 (7th Cir. 2017). The Limited Consent contemplates no such scenario. Nor does it contemplate a scenario in which the City's policies made it impossible for the Individual Defendants to protect Bradford's constitutional rights, as may be the case here. Accordingly, the possibility for a "liability gap" in this case does exist should the Court bifurcate the *Monell* claim, because there may be scenarios under which the Individual Defendants are not liable but the City is, and to which the Limited Consent does not apply.

But while Plaintiff distinguishes this case from others in which bifurcation was ordered because the *Monell* claim could not proceed absent individual liability (including this Court's opinion in *Arrington v. City of Chicago*, 2018 WL 3861552 (N.D. Ill. Aug. 14, 2018)), Plaintiff misses that prejudice alone can justify bifurcation. *See*

10

*Saunders*, 146 F. Supp. 3d at 970 (bifurcating *Monell* claim and staying discovery in part due to potential prejudice to the individual defendants, and noting that whether *Monell* discovery and a *Monell* trial may yet occur did not persuade the court "in either direction"); *Awalt*, 75 F. Supp. 3d at 782 (bifurcating trial due to possibility of unfair prejudice, and noting that fact that *Monell* liability may not be foreclosed following the trial on individual liability was "not the salient issue"). Accordingly, that this may be a case that falls into the "liability gap" is of no moment here, where great prejudice to Defendants is possible in a combined trial.

Plaintiff also argues that much of the discovery in the case is complete, and so Defendants' bifurcation request is too late. But courts in this District have disfavored bifurcation motions filed prior to discovery. *See, e.g.*, *Estate of Loury by Hudson v. City of Chi.*, 2017 WL 1425594, at \*5 (N.D. Ill. Apr. 20, 2017) (denying motion to bifurcate as premature without prejudice to refiling after discovery). Further, that fact discovery is complete eliminates any concerns the Court otherwise may have had about the difficulty of separating *Monell* discovery requests from requests implicating only the Individual Defendants. *See Terry v. Cook Cnty. Dep't of Corrs.*, 2010 WL 2720754, at \*3 (denying motion to bifurcate in part due to the "unnecessary complexity and confusion to the discovery process" then in its early stages). And Plaintiff ignores that the expert *Monell* discovery that remains is both costly and complex. *See Lapre v. City of Chi.*, 911 F.3d 424 (7th Cir. 2018) (describing the detailed and extensive statistical evidence necessary in a jailhouse suicide deliberate indifference case).

11

Finally, the parties disagree over how bifurcation would impact the interests of judicial economy. Defendants argue that a single trial on the relatively simple issues in the case against the Individual Defendants is all that's required, while Plaintiff argues that bifurcation would result in duplicate work and dual trials because "[t]he *Monell* trial is inescapable." R. 179 at 3. The truth is most likely somewhere in between. As discussed, the Court cannot rule out the possibility of a "liability gap" following the trial of the Individual Defendants. Nonetheless, the Court notes that Plaintiff specifically seeks only compensatory damages and attorneys fees, both of which she'd still be entitled to if bifurcation is ordered (and the Limited Consent entered), and either any Individual Defendant is found liable or qualified immunity applies. The possibility of this complete relief outweighs the concern over a potential separate *Monell* trial (and expert discovery). Accordingly, bifurcation also may promote judicial economy and the efficient resolution of claims.

### III. Prejudice to Plaintiff

The Court's conclusion that a trial on all of Plaintiff's claims would prejudice Defendants and that bifurcation may promote judicial economy and efficient resolution of Plaintiff's claims means that the Court may order bifurcation so long as "doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek*, 499 F.3d at 700. The Seventh Amendment is not implicated here because Plaintiff can still pursue the *Monell* claim after trial on her other claims if she so chooses. *See Carr*, 908 F. Supp. 2d at 935 ("bifurcation is not dismissal"). And the Court does not find that bifurcation would otherwise prejudice Plaintiff. In fact,

12

Plaintiff may benefit from bifurcation because her other claims can go forward much more quickly and without the need for expensive and costly expert discovery. And bifurcation would have no effect on the recovery she seeks; as discussed, if the Individual Defendants are found to have violated Bradford's constitutional rights, the Limited Consent will result in judgment against the City for compensatory damages and reasonable attorneys' fees—the only relief Plaintiff seeks. Accordingly, bifurcation is proper here.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to the extent it seeks to bifurcate and stay Plaintiff's *Monell* claim and the expert discovery on that claim, and enter the Limited Consent. R. 175. The Court denies Defendants' motion as moot to the extent it seeks to stay fact discovery on the *Monell* claim. R. 175.

ENTERED:

*Thomas M Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: October 16, 2019